The privilege of having its composition include District Judge Matthew Connelly from the Northern District of Illinois, who is volunteering to sit with us, as many of his trial court colleagues have for the last year and a half. We welcome him and we appreciate his doing double duty here as a trial and an appellate judge. On our argument list today, we have three cases. In addition to being submitted on the briefs without argument later today, that case is Loney v. Social Security Administration, appeal number 3250 from 2007. On the argument list, we'll hear argument first in Wood v. Department of Veterans Affairs. That's appeal 2007-7174. Mr. Stoltz, good morning to you. Welcome to the court. Please proceed. Thank you, Your Honors. Good morning, Honors. May it please the court. The Veterans Court's decision of October 4, 2006 misinterpreted 38 CFR section 3.312C when it upheld the Board of Veterans Appeals' decision essentially denying dependency and indemnity compensation for the appellant, Ms. Wood, because it found the veteran's death was not related to an injury or disease incurred in service. So you're saying that Judge Ivers misconstrued the regulation? Yes, Your Honor. Can you point out the language in his opinion that you consider to contain the misinterpretation? Yes, Your Honor, I can. Page 17 of the joint appendix, the first large paragraph that begins the board's denial, halfway through, it says, Although the board acknowledged that the autopsy report listed the veteran's remote history of a fall in service and associated headaches as one of 18 contributing factors to his death, the board plausibly concluded that the record did not support a finding that such a remote injury occurring 50 years prior to the veteran's death contributed substantially and materially to his death under 38 CFR section 3.312C. Okay. Now, what is the interpretation that's hidden within the words of the sentence you just read? Well, he did not use the plain language that's actually in the regulation, Your Honor. Well, that's certainly true. There's no quotation in the sentence. But it's not so clear to me that this sentence constitutes an interpretation, much less a misinterpretation of the regulation. Well, it's a misinterpretation in that he put the word and where the word or should be, which is a substantially lesser burden for Ms. Wood to overcome. 3.312C states that contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially, that it combined to cause death, that it aided or relented to the reduction of death. Well, is there any difference really between materially, substantially, or combining the two, materially and substantially? It looked to me like they boil down to exactly the same thing. I believe, Your Honor, that if the regulation has an or, the drafter VA meant for there to be an or, meaning two different, substantial and material, must mean different things if there is an or in the regulation. I thought your contention was a bit different. I thought that your contention was that substantially or materially is not a requirement of the regulation because of the semicolons and the other provisions in there that don't include such a requirement. No, Your Honor, that's not exactly our contention. The contention is that all of the clauses within, all of the clauses that are connected by, or I'm sorry, separated by the semicolon go back to substantially or materially, and each is a separate test. Well, isn't that the same thing I was saying, that you're saying that these are alternative tests in the regulation and that substantially and materially is not a requirement of each of the tests? I would say substantially or materially is modified by each of the, it can be read to be modified by each of the semicolons. What do you mean modified by? Well, the test is, as the plain language points out, substantially or materially. Those are clearly two different things. So you agree that's the test? I'm sorry? You agree that's the test? Yes, substantially or materially is the test. It must be, you agree that there's a substantially or materially requirement throughout the regulation? Yes, Your Honor, yes. Really? Let me ask you something else here to get oriented. You're inheriting, so to speak, the briefs filed by Mr. Cohen, is that correct? Yes, Your Honor, that's correct. Now, I noticed that in Mr. Cohen's reply brief, he raises near the very end the AA part of the statute, the general duty to assist, as distinct from the more specific provision dealing with medical reports. So there's a question about whether raising new authority in a reply brief is appropriate, is fair, since the government has no opportunity to respond. So should we not view the attempt to resort to 5103AA on page 7 of the reply brief as inappropriate, and that that argument should be deemed, waived for failure to raise it in the blue brief? Your Honor, to the extent that it is inappropriate, I apologize, and yes. The panel will waive that argument. Now, in your discourse with Judge Dyke, did I understand you correctly to be saying that those various statements in 312 are separate tests, five separate tests? That's your view? I believe so. I believe that the semicolon clauses create independent clauses. Well, they might in lots of cases. I don't want to waste time quarreling about how often semicolons mean big separation and how often they mean less. But it looked to me like some of those things are simply stating exactly the same concept in slightly different words. And to the extent that's true, that suggests, semicolons notwithstanding, that it's five different ways of saying the same thing, not five different things. Your Honor, even if the court would choose to adopt that interpretation, it is still true that the Veterans Court and the board applied a standard that's not contained within Section 3.312C. Well, are we allowed to look at what the board did in its opinion by way of implicit interpretation of 312, as opposed to being limited to reviewing the Veterans Court decision for any possible implicit misinterpretation? I believe that the Veterans Court decision was on appeal here. No doubt about that.  Do you believe, before us, that we can look through that to find a misinterpretation embedded in the board opinion? Well, I don't think that you have to get that far, Your Honor. I believe that the misinterpretation is contained in the Veterans Court's opinion, which upheld, which essentially- But is your only quarrel with the sentence you quoted, the use of the word and separating substantially from materially, which you say should have said or because the regulation said or? Is that the misinterpretation? They should apply or, and that completely changes the test that was applied to Ms. Wood's claim both in the Veterans Court and for what it's worth in the board's decision. Yeah, but is that the only claim of error that you have? Yes, Your Honor. Well, can you explain a little further then, Counsel, why requiring both substantial and material changes the outcome in this case whereas if you only required the one or the other, the opposite result would have been obtained? Well, I believe, Your Honor, that if there, as I stated before when initially answering your question, if it is an or proposition, then that means that there are two distinct tests. In this particular case, as was pointed out in the briefs, on the autopsy report, it clearly lists the veteran's head injury as contributing to his death. We've read it. What are you suggesting? That substantially is a lower hurdle than materially? I would suggest that materially would be a lower hurdle than substantial. So you think you meant materially but not substantially? I know that the court held that Ms. Wood did not meet substantially and materially, which is not the test. They were never divided up. So how would you define, what's the distinction between substantially and materially? How do you define one? How do you define the other? As a matter of fact, I looked at the definitions for that, and the definition of material would be having some logical connection with consequential facts. Substantially, on the other hand, would mean considerable in importance, value, degree, amount, or extent. Those are two very different definitions. So substantially would be a higher standard to meet than materially, at least the way you're reading it? I know that substantially and materially is a higher burden than substantially or materially, as they would be two different tests. Then the next question would be, if you contend that there was an error in using the and versus the or, is there some reason to think that this affected the ultimate outcome? In other words, that if the Veterans Court had applied the right test, that it would have come out with a different result? I believe that it's entirely possible that it would. What's the theory? What's the theory on how? The theory would be, as was pointed out, the veteran's head injury is listed on the autopsy report as a contributing factor. So we're already within the realm of the fact that this was a contributing factor. So that gets you to the logical connection or whatever your definition was for material? Yes. Now what about the rest of the sentence you read from the Ivers opinion, which seems to put a certain amount of stress on the passage of 50 years? Is there something wrong with that? Is there some misinterpretation of regulation .312 somehow embedded in the reference to the World War II injury being so long ago? Well, I believe that when he talked about how long ago it was and what the secretary ended up briefing was the term remote history, and it was a remote history in that it happened a long time ago. But it doesn't take away from the fact that this was a contributing factor listed on the autopsy report that was material to the veteran's death. I don't know that the passage of time, there is no passage of time requirement contained in the regulations, and to raise such a limit into it I believe would be appropriate. Let me ask you something else to try to get further help from you on this. The board at least, not so much Ivers in this opinion, but the board seemed to, well both actually, because the next sentence refers to the death certificate. The death certificate asserts that it was issued following a review of the autopsy report. Yes, Your Honor. And about a month or a little more occurred between the two different documents, which supports the idea that it could have been. Now, the death certificate is signed by the coroner. Was that individual a physician? We have no reason to believe so, Your Honor. Does that mean you don't know? To be perfectly honest, I'm not entirely sure. I'm reasonably confident that he was not a physician. What is the basis of having any level of confidence that he was not a physician? He did not indicate that he was a doctor, Your Honor, whereas Dr. Spindler on the autopsy report did indicate that he was a medical doctor. I believe that the death certificate simply lists what the main cause of death was, which is not in dispute here, it was coronary ischemia, and that the autopsy report further explains that a contributing factor to this innate material factor was the head injury. Do you have any cases which have interpreted substantially and materially to have different meanings? I do not, Your Honor. However, it's worth noting that the Veterans Court in Latham did interpret each clause as separate and did apply it as or. And it's also worth noting that when the court discussed the standard, not in its whole, but when the court discussed the standard, it did articulate it correctly as or. And I believe that or certainly means something different than and. But as far as specific case law on point 3.2.2c, I do not, Your Honor. Well, no, no, not necessarily under this section. Under any statute, if you look generally to see whether there are cases interpreting statutes that include language like that to mean different things for substantially and materially. I did not find any cases on that subject, Your Honor. Counsel, can you help us understand what the board was asked to do? There's some language in the board opinion that may suggest that the widow requested a medical examination. But it's not clear from the language that that happened. Do we have any knowledge of precisely what and how and when Mrs. Wood may have asked for a review of all these different medical files covering 50-some years that led to the board saying, well, we don't need it, in essence. I'm sorry. I believe in 1998 she did file a claim. But it was not part of the joint appendix. And I'm not sure what exactly happened and why they did not go out and get another medical review. Now, do you know when the matter got to the Veterans Court whether the failure to have an examination of the medical records by a physician  I'm sorry, Your Honor. Was the lack of a medical examination of the records a point pressed before the Veterans Court? Yes, Your Honor. How do we know that? Again, it's not part of the record before, Your Honors. However, I did read the pleadings below when it was pressed. It was mostly a duty to assist question below. Well, that's very helpful that you looked at the briefs. You might have included it in an appendix, and that would have helped us understand the extent to which this was not laid. Yes, Your Honor. At least you read it. That's a help. Well, why don't we hear from the government, and then we'll restore your rebuttal time of three minutes that you sought to reserve. Thank you, Your Honor. Thank you, Mr. Stoltz. Mr. Edmonds, good morning to you. Welcome. Thank you. May it please the Court, let me begin by addressing the 38 CFR Section 3.312C argument, which I think has changed between the briefing and this argument today, and I think that that's what Judge Dyke was perhaps asking about. My understanding, well, first of all, let me express my understanding of the argument raised today, which is that the materially and substantially listed in Judge Ivor's opinion is what constitutes the misinterpretation on the part of the Veterans Court in this case. Well, it's also reflected in the board opinion. The board opinion is not entirely consistent. In one place it says or, mostly it says and, right? That's correct, Your Honor. But if my understanding is that the argument is that you have to apply substantially, which is a higher hurdle, or materially, which is a lower hurdle, which on its face doesn't make sense, that contention essentially goes nowhere because on page 18 of the joint appendix, the last page of the Veterans Court's opinion, the Court affirms the finding of the board that the Veterans Headaches or head laceration, or that there was no medical evidence suggesting that the headaches or the head laceration materially contributed to the cause of his death. So if the argument before this court is that materially is the requirement that the board did not, or the board in the Veterans Court did not apply, that argument goes nowhere because as a matter of fact, which this court can't review, the Veterans Court did find the... What page are you on again? I'm on page 18 of the appendix to the petition, to the appellate's brief, and it is the third line down. I'm on the second and third line down, I suppose. I guess the problem with that is that the board opinion doesn't separate out materially the way the Court of Appeals for Veterans claims to. It strikes me that we're looking... The real question ultimately is whether the board applied the wrong standard because the board's making the fact finding rather than the Court of Appeals for Veterans claim. I agree, Your Honor. I was a little taken by surprise, and while I had time to go through the Veterans Court's opinion during the argument, I didn't have time to go through and see if the board specifically separated it like that. But the Veterans Court seems to have found that it did, and it seems to have found that it would be applying the clearly erroneous standard, and that would be a factual conclusion of the Veterans Court that is still unreviewable here, I think, regardless of whether the board did it. But again, Your Honor, with respect to your specific point, I don't remember clearly, and I was not anticipating this argument, so I would have to go back and look, which I haven't been able to do. Actually, I'm scanning through it as you're here, and it looks like that it goes back and forth much in the same way that was pointed out on the Veterans Court opinion. At page 10, when the standard is stated on the last paragraph, it says... Now, somewhere in there, I thought I'd see it. The second line from the bottom, it says substantially or materially. Then over on page 13, when the finding is made, about seven lines from the bottom, the board doesn't find that it contributes substantially and materially. So the actual finding has the and as opposed to the or. Your Honor, I'm sorry. Looking at pages from the appendix, page numbers from the appendix? Yeah, 13 at the bottom. It's a sentence that actually starts about 10 lines up. However, the board does not find that. At the very end of that sentence, it doesn't find it sufficient to establish that the head injury contributed substantially and materially to the veteran's death. Which kind of gets back to Judge Michelle's question. Are we looking at the Veterans Court opinion? Are we looking back at the board's opinion? Are we allowed to look through the one to the other? Well, I think we're in this court's jurisdiction under 38 U.S.C. 7292 is to review the Veterans Court. So if the Veterans Court has made a conclusion, I think that that determination is a determination that this court statutorily reviews. Well, there's no question that we're reviewing the decision as explained in the opinion of Judge Ivers. But that doesn't necessarily mean that we're prohibited from looking at and relying on the Veterans Board opinion. I agree, Your Honor. I mean, I agree with that. The question is whether the Court of Appeals for Veterans Claim made a legal error in sustaining the board's opinion when the board may have applied an incorrect legal standard. So in that sense, it seems to me we do look through it to see whether the board made a legal error. The fact that the Court of Appeals for Veterans Claim might have applied the correct test doesn't do much if in finding the fact the board applied the wrong legal test. Yes, Your Honor. And I would, again, have to go through this opinion and, you know, parse each sentence of it to determine, you know, when substantially and materially means that it has to be substantially and materially or when it is disjunctive to be able to answer the question. Again, I was not – I did not anticipate this argument because I don't think it was raised in the brief. This is a little bit of an unusual and perhaps awkward case where we have new counsel for the veteran but inheriting, as I was saying earlier, briefs by another lawyer who wasn't even the first lawyer in the case for the veteran, and now you are confronted with perhaps some changes in emphasis or perhaps even new arguments being advanced by Mr. Stoltz. And in addition to that, there's the problem that I mentioned earlier that some authority is cited in the reply brief that you had no prior chance to respond to, and here comes you also inheriting a brief written by another lawyer and having to make arguments. Is this a case where maybe the parties in the court would all three benefit from some further briefing? Your Honor, I don't think so, and I think that that goes to the argument I initially came here prepared to make, which is that, you know, no matter how you look at this decision, the regulatory provision in question should be interpreted in the conjunctive. In other words, each of the provisions, you know, each of the three delineated provisions separated by semicolons are all either stating the same thing or are all required, which is really the same thing. Well, they seem now to have conceded that point, but, I mean, we've got here a regulation which, to put it charitably, is not well drafted. It's a bad regulation, okay? But we do have a situation in which the board has construed the regulation as requiring either substantially and materially or substantially or materially, depending on whether you see a difference in those two. We may have a problem, but at least they've construed the regulation as imposing that requirement and not as imposing three alternative tests. So I would think that under Cleveland baseball and those Supreme Court cases about deference to the administrator's interpretation of its own regulations that we'd have to defer to the board. Have we in the past deferred to the board on interpretation of VA regulations? Of course, Your Honor, yes. But let me, as I said, I'm a little surprised, and I think that probably because this argument was not, to return to Chief Judge Michel's question, because this argument in its particular was not raised at all in either brief submitted by the appellant, I think it's waived. Well, you obviously can argue that it's waived and we shouldn't pay any attention to it at all, no matter what. And if we accept that, then you win end of case. On the other hand, while this isn't a criminal case, we're not talking about somebody going to jail, this is a case where we have a system that supposedly is pro-veteran and where the case law suggests that in a close case or equipoise case that the veteran's claim, or in this case the surviving spouse's claim, should prevail. And then, of course, we have the 1988 statute adding to the burdens of the Veterans Administration to assist the veteran in amassing evidence and collecting evidence and even creating evidence. We have cases, I think, where we've required that an examination be done of the veteran on the request of the veteran because obviously the alternative is the veteran, or in a DIC case, the surviving spouse, has to go out and hire a private physician to provide the updated medical evidence or to otherwise fill the gap, and that seems to be the case here. I mean, the alternative to the VA not having a VA physician review all these records from 1945 right up to the date of death or even beyond the date of death to the autopsy is that Mrs. Wood should have had to go out and hire a private physician to do that very review. How do you square putting the burden on her with the 1988 statute that, in addition to giving notice, the Veterans Department is supposed to provide actual assistance, including in certain cases having a physician examine a still-living veteran or, in this case, having a physician on the Veterans Department staff review all these medical records? Well, Your Honor, that question I think goes more to their argument about 38 U.S.C. 5103A and what it requires, and the fact they argued in their initial brief that 5103A.D. applied and obligated the secretary to go out and seek a medical review. That's the waiver point again. Having not argued 5103A.A. in the blue brief, we could say the heck with it. We're just not going to look at it. But maybe the better judgment by us would be to say, well, we are going to look at it, and if you want a chance to brief it, you're entitled to that because you were caught by surprise by something cited for the first time in the reply brief. But whether or not you have a further chance to brief and whenever we finally decide on the waiver point, I still am interested in how do you square the duty to assist in obtaining or creating medical evidence with the implication here that she should have had to go out and hire a physician to review all these medical records. Well, I can square that very easily, Your Honor, even assuming that the argument in the reply brief is valid. First of all, let me take all the arguments. Subsection D, as we stated in our brief, applies only to disability. Do they agree with that? Let's not talk about where there's no dispute. Subsections A and G allow – well, subsection A in particular requires the secretary to assist in the development of a claim. It also – Does that section apply to death benefit claims? Yes, we believe it does, Your Honor. And it applies before the board as well as in the RO, does it not? It does, Your Honor. Okay, so when she gets to the board and says, please have a doctor review all these records, why isn't that a legitimate request on her part? Because the board found, and it is at page 10 of the appendix, that there is no indication that there exists any additional obtainable evidence which has a bearing on the appellant's claim which has not been obtained. That's the board's finding. Well, I'm not asking about medical evidence that exists and is sitting in a file somewhere that the Veterans Department hasn't bothered to gather. I'm talking about medical evidence that would have to be created by having a Veterans Department physician review all of the records that we have in the appendix here and additional similar records. The board further finds on the same page that under these circumstances, the board can identify no further development, no further development as in future development, that would avail the appellant or aid the board's inquiry. Well, how do we know that? We don't know what the physician would conclude reviewing all these records. They're presupposing that if a veterans doctor did look at all these records, he would have to conclude that the World War II head injury was so remote or so minor or something that it couldn't possibly have been a significant secondary cause. But, Your Honor, that's the board's job and it's the Veterans Court's job to determine whether that is supported, and it's not this court's job to review facts. Well, I'm not talking about reviewing facts. I'm saying that the board made an assumption that a physician's examination of all the files would be futile because it would be negative, and I don't see why we should have to accept an assumption made by the board as to what a doctor would find when no doctor was asked to look at anything and find anything. Well, Your Honor, it's not an assumption. The board has looked through the record. The record was massive, almost 2,000 pages long. It looked at the evidence. It discussed the evidence. It discussed that there was no evidence in Dr. Wood, the veterans' cardio-heart health records, that suggested that there was any relation whatsoever to the headaches. Let's just back up a moment. Are there circumstances in which the duty to assist requires the VA to request a physician to look at the records to determine the cause of death? Yes. So there are circumstances. Has the board recognized that there are circumstances in which such a review, a medical review, is necessary? The board did in this case, Your Honor. Okay. Where did it recognize that? It recognized it. In the opinion, I think it talked specifically about 5103A and Well, it says right on the same page. What page? Page 10 that I was quoting from before, Your Honor. In short, the board has carefully considered the provisions of the VCAA, which is the statute we're talking about in light of the record on appeal, and for the reasons expressed above, finds that the development of the claim has been consistent with the provisions of the new law. So the board is saying it's considered the VCAA, and under these circumstances no further development will avail the appellant. Yeah, but that's not quite the same thing as recognizing that under some circumstances they should appoint a doctor to review the records. Well, Your Honor, I'm not sure that the board needs to specifically state that in every case. Well, but aren't they implicitly stating that they don't need to when they essentially make the assumption that just because the autopsy report uses this phrase, contributing factor, that that doesn't really mean that it's a contributing cause. I mean, it seems to me they've made sort of a medical leap there, and I think the point is that they've made that medical leap on their own without getting some competent opinion, when on the one side you've got this woman who essentially doesn't, in all likelihood, doesn't have the resources to go out and hire an expert herself. Well, Your Honor, again, there are 2,000 pages of record in this case. Yeah, but there really are two documents that are critical. The one document is the autopsy report. I read the autopsy report as strongly suggesting that it is a material and substantial secondary cause of death, that he had the head injury back in 1945 at the air base in Texas during World War II. And the board and the Veterans Court then seem to say, oh, well, that's overridden because the coroner didn't agree. Now, if the coroner isn't a doctor, and the autopsy report author is a doctor, then I've got a serious problem with just blithely saying, well, the coroner's determination implicit that because he didn't list this as a secondary cause overrides the physician's judgment that it is a secondary cause. That just seems irrational on its face to me. Well, Your Honor, again, the fact-finding work is done before an appeal proceeds to this court. But in addition to that, there is more evidence than that, and the board and the court noted that there is additional medical evidence related to the heart disease that the veteran suffered from that does not mention anywhere that that was caused by this slip and fall 50 years previously. Moreover, the autopsy report specifically describes the 18 factors that it lists as contributory factors as specifically describes this one particular factor as a remote history of a remote fall. It doesn't provide any medical evidence that would support connection. And finally— It doesn't have to provide everything in and of itself. The regulation .312 specifically calls out autopsy reports as important evidence that must be given due weight. Now here, the autopsy report seems to be viewed as utterly overcome, principally by the coroner's little form that he filled out, when the coroner, as far as we can tell, isn't even a physician. And besides that, the form has so little space. There were 18, as I counted them, secondary causes that the autopsy doctor found, and the form that the coroner is filling out has one little teeny tiny box into which he put two or three of the 18, but left out the rest, including the 1945 injury. So it seems to me the board is making an awful lot out of a form by a non-physician as overriding a detailed autopsy report by a physician. Well, again, there's nothing in the record that suggests— I will say that I know for a fact that he's a non-physician, but there's nothing that suggests that his training, his background, his expertise as coroner is an elected representative of the county in which he sits and presumably receives—though it's not in the record—he receives coroner's training. So he has etiological-related training, and he is, in fact, the final say for the government of that county that signs a certificate of death and identifies the causes. So to say it's simply— Then why doesn't the reg say, rely principally on the coroner's certification, don't worry about any inconsistent statements in autopsy report? In fact, the reg doesn't mention the coroner's certification. It does mention the autopsy report, and it seemed to suggest that very heavy weight should be put on the autopsy report. Well, I don't want to speculate as to why. I mean, there could be different practices in different states. The coroner could perform a different function. The autopsy report could be issued by the coroner. I mean, I don't want to speculate as to why. I'm just talking about the regulation. The regulation seemed to suggest that the autopsy report should be given heavy weight. In fact, here, you could say that the board didn't give it heavy weight, and one of the main reasons was because the coroner didn't agree with it. Well, I don't think that the court— again, the court and the board did note that there was this autopsy report that did list a remote history of a remote fall, and they found that that wasn't sufficient, and they weighed the evidence. The boards, and to the extent it can review under the clearly erroneous standard, the court's job is to make findings of fact. But this court is precluded— We understand that. —from under 7292D2 from reviewing these questions. I'm just trying to figure out why, in the face of such a sharp conflict between the physician's autopsy report and the coroner's report, the board so readily says, we don't need a veteran's physician to interpret all these records. Your Honor, I think that we could explain this better, that it is not simply the contrast of these two, but that there is an entire record that contains other medical evidence in addition to these two documents that doesn't say, well, we diagnose the veteran with heart disease or with heart hypertension or with anything else related to or because of or resulting from the fact that he slipped and fell in the shower 52 years ago. Right, but at a minimum, somebody could go to the medical examiner and say, okay, what the heck did you mean when you wrote this down as a contributing factor? I mean, that wouldn't take much at all. And you've got at a minimum something in the record that's at least ambiguous and maybe way more than ambiguous. It doesn't seem to me that it would have been all that difficult to just go to this person and say, what did you mean when you said that? Contributing factor. Did it mean just anything you could find in the record or did it really mean something more than that? And essentially what you've got here, when you've got a reg that says that you have to give some level of weight to the autopsy report, basically what it seems to me is going on in the decision is that the autopsy report, as Judge Michelle suggested, is somehow being viewed as overridden by this form that's filled out by the coroner. And I will tell you that based on my experience in a past life defending criminal cases, what you say about the level of expertise of county coroners is way beyond anything that I ever experienced. I will admit it's not in the record and the court shouldn't rely on it. I spoke to this coroner in preparation for this case, and he had been through training. Well, that's good that you did that. But I don't think the court can rely on that. It's very encouraging that you took the trouble to do that, just the way Mr. Stoltz took the trouble to read the briefs submitted to the Veterans Court in order to get a sense of what arguments were squarely and fairly pressed to the Veterans Court. That's the kind of preparation that the court so desperately needs from all lawyers. I think it's a great lead to your credit and Mr. Stoltz' credit that each of you took the trouble to investigate just beyond the file that was handed to you. Thank you, Your Honor. I did have other points. Again, let me summarize that. I see I'm over my time, but in light of the kind of surprise arguments, if I could have another minute, I'll wrap up very quickly. I first want to say that the 5103A issue is out of this court's review. I also want to note that that issue was reviewed by a panel yesterday in a case in which Mr. Hockey argued from our office, number 20077108, De La Rosa v. Peek. I want to comment on... What's the point with respect to the case yesterday? We will be submitting a letter just alerting the court. I wanted to alert the panel. That the issues are in common in the two cases? Which issues are in common? This issue of getting an additional medical opinion. Oh, the 5103 issue? Yes. 5103AA issue as opposed to AD issue. I am not 100% certain about that, but I believe so. Mr. Hockey and I talked briefly yesterday, and that's when it came up. I'm sorry, what's the issue in that case? The issue, as far as I know, is whether there is a duty... Well, actually, I believe, given the way Mr. Hockey talked to me about it, it's probably a DIC case that... You know, the question is whether a medical opinion is required under 5103AD. It's called De La Rosa. De La Rosa, yeah. But not AA, as far as you know. I think it may involve AA, Your Honor. I don't want to state that for certain, but... What's the name of the other case? De La Rosa. De La Rosa, yeah. It was heard yesterday. I think that... I think that I've said enough. I think that, in conclusion, 38 CFR 3.312C should be read not as a five-part test, but as a single test defining what constitutes a factor, a contributing factor, and that the scope of review for this court under 38 U.S.C. 5103A or G is confined by the court's jurisdictional limitations and also by the fact that Section D does not apply as the appellant has conceded. And Section A and all of the statutes that they cite in their reply brief confer upon the secretary the discretion to determine whether more evidence is needed. And so there are regulations in another statute, 7109, that confer upon the secretary discretion. With that, we ask that the court affirm the judgment of the Veterans Court. Thank you for your time. All right. Mr. Stoltz, three minutes. Thank you, Your Honor. First, I'd like to point out that the 3.312 argument that was made, that I made today, was fairly presented in both the opening and reply briefs. Where is it in the opening brief? It's in the opening brief at page 8, in which Mr. Conant briefed this case, did cite to the specific language that I pointed out at 16 and 17. So the idea that contributed substantially or materially. Where does the brief argue that there's a difference between substantially and materially? He points out that the court articulated the wrong standard. Yeah, but does he argue that there's a difference between substantially and materially? Specifically, a difference between substantially and materially or substantially or materially, in those words, are not argued in the brief. Yes, they are. Look at the sentence that carries over from page 10 to 11. He doesn't argue the difference between the two, what the two mean, but he does say that there's a difference between and and or. Yes, Your Honor. I think that's pretty clear. Yes, Your Honor. Thank you. Yes, that's true. He does say it. But your specific question, he didn't say it exactly that way, but does get into the issue of and and or. But he doesn't argue that substantially and materially are different. I believe that in the brief he discussed the difference between when there is an or and when there is an and. Yeah, but and and or makes no difference if substantially and materially mean the same thing. I don't see that the brief argues that substantially and materially mean different things. Specifically to that question, I believe that I agree with Your Honor. However, the point of the wrong legal standard being applied, which is the essential point today, the wrong legal standard being applied by both the Court and the Board was fairly briefed and is correct that the Veterans Court did apply substantially and materially, which is not by the plain language of the statute the actual standard that was to be applied in this case. But, Mr. Stoltz, what about harmless error? Even if, in truth, the Board misstated the regulatory standard, if their misstatement or misunderstanding doesn't drive the outcome and under either interpretation they would have arrived at the same outcome, then don't you have a problem that, yeah, there was a legal error, but it didn't affect the outcome, therefore it's tolerated under the harmless error doctrine? But as I said, Your Honor, I believe that there is no harmless error here because materially would be a lesser burden than substantially and materially. It would also, as you pointed out with my opposing counsel, should they have interpreted this correctly, 5103Aa may have been triggered. There may have been all sorts of other factors that the Board would have had to consider had they applied the correct standard in the first place. That was not in this case because they applied such a high burden. Apparently they believed that 5103Aa didn't apply to the case, which is something that under a lesser burden they may have very well found they needed to do in this case. All right. We thank both counsel. We'll take the appeal under advisement. Thank you, Your Honor.